## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KIMBRA NAPIER,** | : | |
| | : | |
| **Plaintiff** | : | **Civil Action No. 1:10-CV-2511** |
| | : | |
| **v.** | : | |
| | : | |
| **COUNTY OF SNYDER,** *et al.*, | : | **The Honorable Sylvia H. Rambo** |
| | : | |
| **Defendants** | : | |
| | : | |

### MEMORANDUM

Before the court is Defendants County of Snyder, Joseph E. Kantz,

Malcolm L. Derk, III, and Richard W. Bickhart's motion to dismiss (Doc. 27)

Plaintiff's second amended complaint (Doc. 24).  For the reasons that follow, the

motion will be granted in part and denied in part.


I.          **Background**

A.     **Facts**[1]

Plaintiff, Kimbra Napier, was fifty-three at the time of the complaint

and was formerly an employee of Defendant Snyder County.  (Compl. ¶ 7.)

_____

[1]     As required when disposing of a motion to dismiss, all factual allegations in
the complaint are accepted as true by the court.

Defendants Joseph E. Kantz, Malcolm L. Derk, III, and Richard W. Bickhart were the Snyder County Commissioners. (*Id.* ¶ 9.)

In 2002, Plaintiff was appointed by the then County Commissioners to the position of Chief Assessor for Snyder County. (*Id.* ¶ 10.) Plaintiff's original pay was $29,575.00 based on 32.5 hours of work. (*Id.* ¶ 12.) In 2003, Plaintiff's weekly hours were increased to 35 and her pay rose to $32,486.00. (*Id.* ¶ 13.) In 2004, Plaintiff's hours were again increased to 37.5 and her pay was increased to $36,680.00. (*Id.*) Finally, in 2005, Plaintiff's hours were set to 40 and her salary went to $40,206.00. (*Id.*) Plaintiff claims that during this time her hours were set at 40, but she was actually working approximately 45 hours per week. (*Id.* ¶ 14.)

The Defendant Commissioners began their terms in office in January of 2008.[2] (*Id.* ¶ 15.) It was after the new group of Commissioners took office that Plaintiff claims they started "a focused effort to force [her] from her position as Chief Assessor." (*Id.* ¶ 18.) This effort began in February 2008 when Plaintiff attempted to take disciplinary action against one of her subordinates, Bambi Wagner. (*Id.* ¶ 19.) Without Plaintiff's knowledge and against protocol, Defendant Derk

_____

[2]   Defendant Bickhart actually started his second term in office in January 2008 after winning his bid for re-election. (*Id.* ¶ 15.)

informed Ms. Wagner that Plaintiff's attempted disciplinary action against her would

be ignored. (*Id.*) Shortly after this incident, in March 2008, the Defendant

Commissioners filed a disciplinary grievance against Plaintiff for an alleged

violation of the County email policy. (*Id.* ¶¶ 20-21.) Plaintiff appealed the

disciplinary action and it was eventually repealed by the County at the following

Commissioner's meeting. (*Id.* ¶ 35.)

Also during this time, Plaintiff was attempting to comply with the

Homestead Farmstead Taxpayer Relief Act ("Homestead Farmstead Act"), which

required that the Tax Assessor's Office mail applications each year to property

owners sixty days prior to the application deadline of March 1. (*Id.* ¶ 36.) In

addition to mailing the applications, and receiving them by March 1, 2009, the

Assessor's Office had to process the applications, send approval or denial responses,

and send a certification report to the schools by May 1, 2009. (*Id.* ¶ 38.) In

December 2008, Plaintiff anticipated an increased workload due to the mailing of

applications. (*Id.* ¶ 37.) Without additional compensatory or overtime hours, or

additional staffing, it would not be possible for the Assessor's Office to meet the

deadlines established by the Homestead Farmstead Act. (*Id.* ¶ 39.) Plaintiff told the

Commissioners on three different occasions how much work would be required to

mail the applications, and more significantly, properly process them. (*Id.* ¶ 42.) Defendant Derk eventually authorized four extra hours of work time, but it was only after the Assessment Office had already lost at least two weekend days when they could have been processing applications. (*Id.* ¶ 44.) Defendant Derk also assigned additional employees from the Commissioner's Office to assist in processing applications, however, because these employees were not familiar with the Homestead Farmstead Act, they could only be used for limited clerical tasks. (*Id.* ¶ 45.) In April 2009, Defendant Derk asked Plaintiff to submit, within twenty-four hours, a detailed plan on how she anticipated fulfilling the deadlines required by the Homestead Farmstead Act. (*Id.* ¶ 46.) Plaintiff responded that she was unable to predict at that time how long the processing of applications would take. (*Id.* ¶ 46.)

Plaintiff alleges that in an effort to force her from her position, in January 2009, the Salary Board voted to cut her weekly hours from 40 back to 37.5. (*Id.* at 47.) Her pay would likewise be reduced from $45,635.00 to $42,783.00. (*Id.*) Plaintiff was the only Snyder County employee to have hours reduced at that time. (*Id.* ¶ 48.) Snyder County cut Plaintiff's hours despite the fact that the Assessment Office was overburdened with several large projects, including the Homestead Farmstead Act applications. (*Id.* ¶ 49.) Despite Plaintiff's request for additional

4

support, as was customarily provided during large projects, in this instance Snyder

County initially refused to provide additional hours or support to assist Plaintiff in

fulfilling the statutorily required deadlines of the Homestead Farmstead Act. (*Id.* ¶

51.) Plaintiff's department was ultimately unable to meet the May 1, 2009 deadline

and was therefore unable to provide a report to the school districts by that date. (*Id.*

¶ 52.) However, Plaintiff spoke with a representative of the Bureau of Budget and

Fiscal Management at the Pennsylvania Department of Education and was told to

submit the reports as soon as they were available. (*Id.*) Plaintiff was also told that

many other counties had likewise been unable to meet the May 1, 2009 deadline.

(*Id.*)

Despite the fact that other counties had been unable to meet the May 1,

2009 deadline, Snyder County[3] demoted Plaintiff on May 19, 2009, effective May

20, 2009. (*Id.* ¶ 53.) Plaintiff was informed that an individual by the name of

Wendy Cook, who had previously been Plaintiff's subordinate, would replace her as

acting Chief Assessor. (*Id.*) Plaintiff's employee classification was also changed to

reflect that she was now a non-supervisory, hourly employee and her wages were

---

[3]   Plaintiff does not state who specifically within the County chose to demote her.

reduced to $35,315.00 annually. (*Id.*) From May 20, 2009, to May 22, 2009,

Plaintiff worked in the office and prepared to turn matters over to Wendy Cook. (*Id.*

¶ 54.) During this time, Plaintiff suffered a severe panic attack and called her

physician to schedule an appointment for May 27, 2009. (*Id.* ¶¶ 55-56.) Plaintiff

was prescribed medication and began treatment requiring her to take sick time

commencing May 28, 2009. (*Id.* ¶ 56.) On May 27, 2009, an announcement of

Plaintiff's demotion was posted in the local paper, causing her to continue to suffer

from various medical and psychological problems. (*Id.* ¶ 61.) This same day,

Plaintiff applied for coverage under the Family Medical Leave Act ("FMLA") which

was approved. (*Id.* ¶ 63.) Plaintiff remained on FMLA leave until August 27, 2009,

at which point she was informed her leave time had been exhausted. (*Id.* ¶ 64.)

However, because of the hostile work conditions created by Snyder County,

Plaintiff's physician and psychologist would not approve her to return to work after

her FMLA leave had expired. (*Id.* ¶ 65.) The psychological impact of her demotion

rendered her unable to return to work. Her inability to return to work as a Field

Assessor due to her mental and physical health, resulted in a constructive discharge

of Plaintiff on August 31, 2009, when Wendy Cook was officially named Tax

Assessor. (*Id.* ¶ 66.) This same day, Snyder County ended all pay and benefits

being distributed to Plaintiff. (*Id.* ¶ 67.) On March 30, 2010, Plaintiff applied for unemployment benefits and the Unemployment Compensation Board of Review determined that Plaintiff was physically or emotionally unable to return to work in the position of Field Assessor and further determined that she did not voluntarily resign her position. (*Id.* ¶ 68.)

Plaintiff's replacement, Wendy Cook, was thirty-five at the time of her appointment and did not possess the same level of managerial skills or supervisory experience as Plaintiff. (*Id.* ¶¶ 57-58.) In addition, Ms. Cook had never handled a countywide reassessment nor had she been involved in county litigation. (*Id.* ¶ 58.) By contrast, Plaintiff had supervisory and management skills, an Associate Degree with an emphasis in Business Administration, general appraiser training, and had experience with assessment appeals and litigation. (*Id.* ¶ 59.) Plaintiff alleges that Defendants had no legitimate, non-discriminatory reason to replace her with Wendy Cook and that she was discharged solely because of her age. (*Id.* ¶ 60.)

Plaintiff, in addition to alleging she was constructively discharged due to her age, also claims she was constructively discharged for choosing to exercise her First Amendment right to free speech, based on the following set of facts. (*Id.,* Count III.) In Spring 2007, Plaintiff was informed by one of her staff that there may

have been an error in the assessment records meaning taxes were not being assessed on a particular uninhabited farmhouse. (*Id.* ¶ 98.) Plaintiff subsequently determined that this property was improperly exempt from the tax rolls and that it was owned by the Snyder County Prothonotary, Theresa Berger, and her husband. (*Id.* ¶ 100.) Plaintiff recommended to the Board of Assessment Appeals that the farmhouse be put back on the tax rolls. (*Id.* ¶ 101.) In Snyder County, the County Commissioners also serve as the Board of Assessment Appeals. (*Id.* ¶ 101.) At this time, Defendant Bickhart was a Commissioner on the Board and voted to put the farmhouse back on the tax rolls. (*Id.*) Commissioner Defendants Kantz and Derk had not yet been elected.

On October 12, 2007, Prothonotary Berger placed an advertisement in the local paper and also bought radio air time to condemn Plaintiff for returning her farmhouse to the tax rolls. (*Id.* ¶ 104.) In response to this advertisement, on October 18, 2007, Plaintiff wrote a letter to the editor of the local paper explaining why she recommended the property be returned to the tax rolls. (*Id.* ¶¶ 105, 111.) Plaintiff alleges that in January of 2008, when Defendants Katz and Derk began their term as Commissioners, they were unfamiliar with government administration and were greatly influenced by Prothonotary Berger. (*Id.* ¶¶ 107-09.) When one of Plaintiff's

subordinates prepared a form to put the farmhouse back on the tax rolls, the form was never processed. (*Id.* ¶ 110.) Plaintiff alleges that the subsequent negative actions the Commissioners took against her were in retaliation for her exercising her right to free speech when she sent her October 18, 2007 letter to the local paper. (*Id.* ¶ 112.)

### b.    Procedural History

On December 9, 2010, Plaintiff filed her original complaint. (Doc. 1.) On February 4, 2011, Defendants filed a motion to dismiss the complaint. (Doc. 11.) On February 17, 2011, Plaintiff filed an amended complaint. (Doc. 15.) Defendants filed a motion to dismiss the amended complaint on February 25, 2011. (Doc. 17.) On March 11, 2011, Plaintiff filed a motion for leave to file a second amended complaint, with the second amended complaint attached. (Doc. 21.) The court granted this motion and on March 15, 2011, the second amended complaint was docketed. (Doc. 24.) On March 29, 2011, Defendants filed a motion to dismiss the second amended complaint and brief in support. (Docs. 27, 28.) Plaintiff filed her brief in opposition on April 7, 2011, (Doc. 29), to which Defendants replied on April 18, 2011, (Doc. 30). On April 25, 2011, Plaintiff filed a motion to file a sur-reply

brief. (Doc. 31.) This motion was denied on April 25, 2011. (Doc. 33.) The motion is now ripe for disposition.

## II.        **Legal Standard**

When presented with a motion to dismiss for failure to state a claim, the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions," *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009), and ultimately must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, ___U.S.___, 129 S. Ct. 1937, 1950 (2009)).

The complaint must do more than allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Fowler*, 578 F.3d at 211 (citations omitted). As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a) (alterations in original).) In other words, a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

10

defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.*

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit*, 998 F.2d at 1196. Additionally, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (citation omitted); *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotation omitted). However,

the court may not rely on other parts of the record in making its decision. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

Finally, in the Third Circuit, a court must grant leave to amend before dismissing a civil rights complaint that is merely deficient. *See, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007); *Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

## III.      Discussion

Plaintiff alleges Defendant Snyder County constructively discharged her because of her age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*[4] In addition, Plaintiff claims Defendant Snyder County, and Defendant Commissioners Kantz, Derk, and Bickhart, retaliated against her for exercising her First Amendment right to free speech in violation of 42 U.S.C.

---

[4]    Plaintiff also brings a pendant state law claim based on the same set of facts under the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.*

§ 1983.  Defendants argue that Plaintiff's ADEA and PHRA claims are barred by the

applicable statute of limitations, and that she has failed to plead a cause of action

under 42 U.S.C. § 1983.

> ### a.   ADEA and PHRA

Generally under the ADEA, a charge of discrimination must be filed

with the Equal Employment Opportunity Commission ("EEOC") within 180 days of

the alleged unlawful practice.  29 U.S.C. § 626 (d)(1)(A).  However, in a "deferral

state," such as Pennsylvania, a plaintiff has 300 days in which to file a charge of

discrimination with the EEOC.  29 U.S.C. § 626 (d)(1)(B).  The PHRA requires a

plaintiff to file a charge of discrimination within 180 days of the alleged act.  43 P.S.

§ 959 (h).

In the instant case, Defendant Snyder County does not dispute that

Plaintiff's August 31, 2009, constructive discharge occurred within the applicable

300 or 180 day requirements of the ADEA and PHRA.  (*See* Br. Supp. Mot. to

Dismiss, at 5.)  However, Defendant Snyder County argues that Plaintiff's other

alleged acts of discrimination, namely, her demotions and acts which undermined her

supervisory authority, should be dismissed as they occurred outside the time period

within which a plaintiff must file an EEOC charge.  Plaintiff counters that she should

be allowed to present evidence of these claims under a "continuing violation" theory of discrimination.

The "continuing violation" theory states that, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." *Snyder v. Baxter Healthcare, Inc.*, 393 F. App'x 905, 909 ( 3d Cir. 2010) (quoting *Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am.*, 927 F.2d 1283, 1295 (3d Cir. 1991) (stating that plaintiff's claims must be dismissed because plaintiff "fails to allege *any* specific act of discrimination that occurred within the statute of limitations period . . . . [plaintiff must allege] at least one specific, timely violation.") (emphasis in original)).

Here, the parties do not dispute that Plaintiff's constructive discharge occurred within the statutorily required time periods.  As such, at this stage in the litigation, the court will allow Plaintiff to submit evidence under the "continuing violation" doctrine, regarding earlier alleged acts of discrimination which may

otherwise be time-barred.[5]  As such, Defendants' motion as to Plaintiff's ADEA and

PHRA claims will be denied.

### b.     First Amendment Retaliation

Plaintiff claims that in addition to being constructively discharged based

on her age, she was retaliated against for exercising her right to free speech in

violation of the First Amendment when she wrote a letter to the editor of the local

newspaper explaining why she recommended placing the Prothonotary's property

back on the tax rolls.  Defendants counter that Plaintiff has failed to allege a causal

connection between this letter and her constructive discharge.

The Third Circuit follows a three-part test for First Amendment

retaliation claims: "First, a plaintiff must establish the activity in question was

protected. [Second], plaintiff must show the protected activity was a substantial or

motivating factor in the alleged retaliatory action. [Third], the public employer can

---

[5]     Defendant cites to two Third Circuit cases — *Sgro v. Bloomberg L.P.*, 331 F.
App'x 932 (3d Cir. 2009) and *Mikula v. Allegheny County*, 583 F.3d 181 (3d Cir. 2009) —
where the court has declined to apply the continuing violation because the alleged discriminatory
conduct constituted "discrete acts" which were individually actionable and thus tolled the
limitations period.  However, both these cases deal with motions for summary judgment where
additional evidence was available to the court.  At this stage of the litigation, the court will take
Plaintiff's allegations as true that the alleged discriminatory acts which took place prior to her
constructive discharge were, in fact, part of a continuing pattern of discrimination and not
discrete actionable incidents.

15

rebut the claim by demonstrating it would have reached the same decision even in the absence of the protected conduct." *See Baldassare v. State of New Jersey*, 250 F.3d 188, 195 (3d Cir. 2001) (internal citations omitted).

Here, Defendants do not dispute that Plaintiff engaged in a protected activity. (*See* Br. Supp. Mot. to Dismiss, at 14.) Instead, Defendants argue that Plaintiff has failed to show that Defendants took an adverse action against her and that the motivation for this adverse action was Plaintiff's engagment in a protected activity.

At this stage in the litigation, the court is not prepared to conclude that Plaintiff has failed to allege a causal connection between the letter that was published in the local newspaper. The complaint alleges that Plaintiff's letter to the editor was published in October 2007. In November 2007, Defendants Derk and Kantz were elected to office and began their terms in February 2008. The Prothonotary, the subject of Plaintiff's letter, exerted much control and influence over Defendants Derk and Kantz. As such, immediately after taking office, Plaintiff claims the retaliatory conduct began, starting with meddling in Plaintiff's attempt to discipline a subordinate in February 2008. This was followed by a frivolous disciplinary action being filed against Plaintiff in March 2008, and the failure to provide Plaintiff with

appropriate hours or staffing in December 2008, which caused her to be unable to fulfill the statutorily required mandates of the Homestead Farmstead Act. This led to her subsequent constructive discharge in 2009, when she was eventually replaced by one of her subordinates and forced to assume a non-supervisory position which she was not physically or mentally healthy enough to undertake. Plaintiff further alleges that because of the close relationship between the Snyder County Prothonotary and Defendants Derk and Kantz, these Defendants, along with Defendant Snyder County, took action to retaliate against Plaintiff for her letter to the editor. These allegations set forth a plausible retaliation claim and, as such, Defendants' motion will be denied as to Defendants Snyder County, Derk and Kantz.

As for Defendant Bickhart, the complaint makes no allegation with regard to him and any retaliatory acts he may have committed. The complaint merely states that Defendant Bickhart was already a Commissioner when Derk and Kantz began their terms and that he voted to put the Prothonotary's farmhouse back on the tax rolls. These allegations are insufficient to state a cause of action for First Amendment retaliation. Therefore, Defendants' motion as to Defendant Bickhart will be granted.

**IV.      Conclusion**

17

For the aforementioned reasons, Defendants' motion to dismiss will be granted in part and denied in part. At this stage of the litigation, Plaintiff has presented sufficient evidence that her ADEA and PHRA claims against Defendant Snyder County survive any statute of limitation deficiencies based on the "continuing violation" doctrine.

Defendants' motion to dismiss Plaintiff's First Amendment claim against Defendants Snyder County, Derk and Kantz will be denied. Defendants' motion to dismiss this claim against Defendant Bickhart will be granted.

An appropriate order will issue.

s/Sylvia H. Rambo<br>SYLVIA H. RAMBO<br>United States District Judge

Dated: June 29, 2011.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KIMBRA NAPIER,                           :
                                         :
              Plaintiff                  :      Civil Action No. 1:10-CV-2511
                                         :
         v.                              :
                                         :
COUNTY OF SNYDER, *et al.*               :      The Honorable Sylvia H. Rambo
                                         :
              Defendants                 :
                                         :

## O R D E R

AND NOW, for the reasons mentioned in the accompanying

memorandum of law, **IT IS HEREBY ORDERED THAT**:

1) Defendants' motion to dismiss (Doc. 27) is **GRANTED** as to

Defendant Bickhart.

2) The motion is **DENIED** in all other regards.

                                  s/Sylvia H. Rambo
                                  SYLVIA H. RAMBO
                                  United States District Judge
Dated:  June 29, 2011.